Our final case on the call of the docket today, September 15, 2011, is agenda number 12, case number 111-860, People v. Rice. Counsel for the appellant. Good morning, Chief Justice Kilbride. Honorable Justices and opposing counsel, may it please the Court. My name is Miles O'Rourke, and I, along with co-counsel Andrew Levine, are here on behalf of Special States Attorney Stuart Noodleman, who was appointed to this cause by the Chief Judge of the Criminal Division for the Circuit Court of Cook County, Paul P. Beeble, Jr. The primary question that the State asks this Court is whether the use of a coarse confession as substantive evidence of guilt is subject to harmless error review. The Appellate Court, in its December 2010 opinion, utilized the rule set forth by this Court in 1987 in People v. Wilson, a rule that relied on United States Supreme Court authority then existing, that the use of a coarse confession as substantive evidence is never harmless error, and found that the defendant in this case established prejudice in its reversal of the trial court order, which denied defendant leave to file a third post-conviction petition. That decision, the State contends, is in conflict with the prevailing Supreme Court interpretation of the Fifth Amendment to the United States Constitution under which this claim was brought. It is also in conflict with subsequent determinations made by this Court in reviewing claims that come before it on post-conviction review, such as the case in People v. Reginald Mahaffey and the analysis that was utilized in People v. Madison-Hobley. The adoption of the rule to satisfy prejudice in the post-conviction context also, in review of these claims, also frustrates the plain language of the Post-Conviction Hearing Act, which was codified into this law at 725 ILCS 5-122-1F. For these reasons, we would ask that the Court reverse the decision of the Appellate Court. In 1991, a majority, a bare majority, of the United States Supreme Court in the case of Fulminante v. Arizona found that harmless error review applies to coerced confessions. It reasoned that review is appropriate because a coerced confession that comes into the presentation of a criminal case is a classic trial error that can be quantitatively assessed in light of the other evidence that is set forth and presented in that case. But doesn't the language in Fulminante indicate the Court would have treated the harmless error issue different if it had been physical coercion? No, it does not. The State does not believe it would have treated it differently. I believe the courted language is especially true, but the rule itself says the use of a coerced confession is subject to harmless error review. And in that case, that was not a police brutality case, was it? No, it was not, Justice Freeman. So how does it apply here, if that was the case of a police informant? We believe it applies here because- It was written physical harm. That is correct. We believe it applies here because the use of a coerced confession, no matter how it is obtained, violates and implicates that right, that right to not have your confession introduced at trial against you. And the purpose for the rule, as this Court found in People v. Winstead, which was interpreting Oregon v. Elstad's United States Supreme Court decision, found that the Fifth Amendment to the United States Constitution precludes the evidence because it is unreliable. But not as a matter to, not as a reason to deter unlawful police misconduct. These were acts that went over, kept on for a number of days, is that correct? In this case, no. The acts did not go over a couple days. It went over a couple hours, the alleged acts. Any DNA, any evidence linking the defendant to this crime other than his confession? There was substantial evidence that was used by the State that was linked to the confession, which brings us to the point was- Any physical evidence? Yes. The physical evidence, the iron that was used to burn Karen Byron's body, was found in the defendant's bedroom. There was eyewitness testimony that he went up and down the stairs with the iron, and while his friends were raping this woman, was using it and punching her throughout the evening and during a three-hour period on September 9, 1982. There's also evidence of another confession that was made to a certain Bobby Williams, who was also present in that house, and wherein Williams testified to it that Stanley Rice and others burned Karen Byron. Bobby Williams also testified to seeing Stanley Rice raping this woman. So we believe that there's physical evidence that corroborates, which were physical evidence that were obtained in Stanley Rice's bedroom on that night, and it's undisputed that he was there, and also that corroborates the accounts that were given. The physical evidence is established by witnesses? That's correct, and it was recovered from his bedroom in the second story of that house. But again, no DNA? No DNA back in 1982. I believe that DNA was utilized and actually used subsequent to this case, and there was also no fingerprints that were obtained on the iron or a piece of paper that was used to burn her face. The United States Supreme Court in Fulminante reasoned that the use of a coerced confession, that evidentiary impact and its effect upon the composition of the trial record, is indistinguishable from a confession obtained in violation of the Constitution's Sixth Amendment, evidence seized in violation of the Constitution's Fourth Amendment, or a prosecutor's improper comment on a defendant's right to remain silent, in violation of the Fifth Amendment. Fulminante vests discretion in reviewing courts to undertake a judicially manageable framework and standard that was originally applied in Chapman v. California to assess trial errors in light of other evidence. We believe because the use of a coerced confession is a matter of federal law, which is what this claim was brought towards, the Fifth Amendment, we believe that the United States Supreme Court's majority opinion is controlling in this cause. But we also believe that the Illinois Post-Conviction Hearing Act and the subsequent determinations made by this Court are equally authoritative and even more so illuminative as to the analysis that can take place in utilizing an assessment of the record. So therefore, we believe that a per se adoption that prejudice is presumed under the Post-Conviction Hearing Act is not the state of the law in Illinois as well. The application of Wilson to satisfy cause and prejudice in this context, in this trial record, is certainly in conflict with previous decisions of this Court. This Court has already looked towards overwhelming evidence in People v. Reginald Mahaffey. In affirming a trial court's determination that a post-conviction claim did not state newly discovered evidence, it looked towards overwhelming evidence despite a 23-page confession that was introduced in that case. And it suggested that the outcome of trial would not have been different. The Court in the second post-conviction opinion in this case, which was the previous appellate court order, which the third post-conviction court had before it, likened this case to People v. Hobley because the statements themselves are denials of criminal responsibility. There's two different statements that were made to the prosecutor at Area 2, one of which was a complete denial of any involvement by Stanley Rice, who was arrested at his house, and the second was that he went upstairs and he saw his friends raping her and that he dropped an iron on her. This was entirely cumulative to properly admitted evidence that was set forth through the eyewitnesses Kenneth Lewis and Bobby Williams. Now, it is clear from this record that the woman, the victim, was an alcoholic who could not make an identification of this individual and did not have that ability to make an identification over the various people who were raping her. So the evidence that came forward throughout the trial record is really principally obtained from the two eyewitnesses. And when you say Bobby Williams, he's the co-defendant? That's correct. And does he not also allege that he was beaten? Bobby Williams alleges now that he was beaten subsequent to stating, well, after he told them what occurred at Area 2. And he also testified eight months later in May 1983 to his account of what occurred with Stanley Rice going up and down the stairs using the hot iron, which corroborated another eyewitness's testimony. And what about Kenny Lewis, is that the name? Kenneth Lewis. What about his testimony, has that changed? No, his testimony has not changed. And procedurally, were it sort of like the mid-inning between the second and the third as far as post-conviction goes? That's correct. Well, actually, we are in the third post-conviction petition, so I think we are probably along the... But there's been no evidentiary hearing in the third phase, is that right? That's correct. Was it the appellate court ruling to remand it for an evidentiary hearing? That's correct. So in terms of determining factually now at this stage, that's what's being asked for is to send it back. I mean, that's what I presume Ms. Lambros is going to argue today, is that they want to go back and have this evidentiary hearing. They want to go back and have an evidentiary hearing. That's where we are in the procedural context right now. And so we have skipped the second stage review and the first stage of the review. May I ask, and that does confuse me, that's a piece that I'm confused by. The court, you are correct, the appellate court remanded this for a third stage evidentiary hearing. Do you have a sense why the second stage was stepped over? Prejudice was presumed through the application of the Wilson Rule. So the prejudice was the use of a coarse confession is never subject to harmless error. There is more evidence, newly discovered evidence, that would make it more likely than not true that the claimed constitutional violation exists, and therefore we should proceed to an evidentiary hearing. But in a second stage, the petition could be amended, for example. That's correct. So why not send it back to the second stage first? That is what exactly the State had the difficulty in understanding the import of this rule, is that ordinarily it would go to a first or second stage for an initial determination and then an amendment. In this case, in a previous post-conviction, the petitioner was already allowed to amend and use newly discovered evidence in that case. And on a modified order on denial of rehearing, the appellate court determined that, looked at the opinion on direct appeal, which stated that his convictions were sufficient to prove him guilty beyond a reasonable doubt without one mention of these statements, and also that those statements that are now being challenged. I don't think you've really answered my question about the procedure. I am really concerned about the procedure right now. Usually here the leave to file was denied. That's right. So that's the issue that we're to review today. If we were to disagree, we'd say that this should be filed.  Wouldn't the next step be to remand this for a second stage, therefore having an opportunity to amend whatever it was that was originally filed? That is correct, Justice Dyson. That is the correct procedure as we see it. This Court in People v. Pitsenberger, well, leading up to that, we also believe that the determination that it was made to establish prejudice was violative of this Court's holding in People v. Pitsenberger, which set forth the requirements for establishing prejudice under the Post-Conviction Hearing Act. Prejudice is shown by demonstrating that the claim not raised in the initial petition so infected the trial that the resulting conviction or sentence itself violated due process. The Act requires the trial court to examine the record and determine what impact the claim would have had on the rest of the trial, in this case the exclusion of these statements. By holding prejudice satisfied because the use of these coerced statements is never harmless error, the decision would divest the trial court of its obligation to independently assess the evidence to see whether, at a second stage review, newly discovered evidence would have more likely than not changed the result of trial. That's exactly what occurred in previous proceedings, the records of which and the opinions of which were before this third post-conviction court. So the entire record in this case suggests the outcome of guilt or innocence would not have changed, even assuming it proceeds to a second stage determination. That is because on appeal from an earlier post-conviction decision, the appellate court found that the evidence of police brutality that was attached to Stanley Rice's petition was unsupportive of his position at trial, where he consistently maintained that he did not confess and likened its holding to this Court's reasoning in People v. Hobley and determined that in an earlier opinion. The use of a coerced confession is subject to harmless error review under the Fifth Amendment of the United States Constitution, according to a majority of the United States Supreme Court. If there is overwhelming evidence apart from the challenged statements, it cannot be said that his convictions violate fundamental fairness or due process. We believe that the effect of holding otherwise would be calamitous because Illinois state courts would be deprived of their right and statutory obligation to review the record and assess the quantitative impact of these statements on the remainder of the trial record. This inquiry would be meaningless if a per se rule adopting prejudice would proceed. Mr. O'Rourke, if we allow harmless error analysis to apply, aren't we essentially reverting back to the inquisitorial system in place long ago rather than the accusatorial system we've adopted? Justice Burke, no, we would not be doing that. What we would be doing is examining the trial record to see whether overwhelming evidence apart from and excluding that and isolating that evidence and see whether the overwhelming evidence or whether there is overwhelming evidence. This does not necessarily mean that a harmless error review would not necessarily occasion a new trial or disallow a new trial. It just means that a harmless error review could be applied. This Court already has applied harmless error in, well, overwhelming evidence, in this case in People v. Mahaffey. It has already looked towards overwhelming evidence in an inquiry that would be meaningless under this per se adoption of the Wilson Rule. And the Wilson Rule, again, was predicated and premised solely on United States Supreme Court authority and Payne v. Arkansas and the authorities that were preceding it. So we don't believe that it would violate due process. The convictions themselves do not violate due process. Now, that's not to suggest or infer in any way that the State condones police brutality or these practices. I know, but don't you dispute the confession is the most probative and damaging evidence against a defendant to a jury? And even if told not to, the jury would still have heard it, and how are they going to ignore it? So essentially it will never be possible to determine whether exclusion would have resulted in a different result. No, we do not dispute the claim that a confession has a prejudicial and powerful impact on a jury. In this case, though, it is essential to examine the statements that were made because here we do not have a confession of criminal guilt that was utilized by a State principally in showing petitioner's guilt for the conviction. It appears on the direct appeal decision that the appellate court affirmed a reasonable doubt challenge without any citation to these statements. So in answer to your question, Justice, it really would depend on the judicial review of what the confession is. If the confession is an admission of guilt, certainly that's the most primary probative piece of evidence that comes before a jury. Certainly it is. And it would probably not necessarily hypothetically ever survive due process review, but we need to quantitatively assess what those statements were to see whether they contribute to the convictions that were obtained, whether they are merely cumulative, or whether there is sufficient evidence apart from those statements upon which these convictions stand. Again, the direct appellate court has already determined that there is sufficient evidence apart from these statements upon which these convictions stand. And for these reasons and for the reasons of judicial discretion in this State and that the use of coerced confession would be just as impactful on an individual who is coerced in Kankakee, Alton, Godfrey, or even in Cook County, we would ask that judicial review be had because courts deal with these problems every day. We are also mindful of this Court's decision in Peeble v. Ricky Patterson where it utilized the Fomenante framework in a Sixth Amendment challenge on grand jury testimony. Well, a grand jury testimony that contains a confession that is unimpeached can be just as impactful, and this is part of Chief Justice Rehnquist's decision, as a claim of coerced confession that can be impeached during the course of a criminal trial, therefore is difficult to differentiate. And for these reasons we would ask, especially Justice Tice, on advancing this case to an evidentiary hearing on a procedural posture, that the appellate court's determination be reversed as an incorrect statement of federal law as applied to the States in a post-conviction hearing act, and also that it not be reversed because it presumes prejudice and advances to an evidentiary hearing without an amendment. We thank you for your consideration, Justices. If you have any other questions, I'd like to answer them. Thank you, Mr. O'Rourke. Are there any questions? Thank you. Thank you. Ms. Lambrose. Good morning, Your Honors. My name is Heidi Lynn Lambrose from the Office of the State Appellate Defender, representing Defendant Appellee Stanley Rice. May it please the Court, Mr. Rice is asking for this Court to affirm the unanimous and published decision of the Illinois Appellate Court remanding his cause for an evidentiary hearing. As part of that analysis, the Appellate Court found that Mr. Rice established cause and the State has conceded that Mr. Rice has established cause. The only issue before this Court right now is the prejudice prong. As far as prejudice, regardless of Wilson and Fulminante, prejudice required Mr. Rice to establish that this error, which again is the admission of his physically tortured confession at the hands of John Burge Henchman, John Byrne, and Peter Dignan in the basement of the Area 2 police lockup in 1982, the admission of that involuntary confession that was tortured and beaten out of him at his trial. And this most certainly was a confession that so infected these proceedings. More than half of the evidence offered at Mr. Rice's trial had something to do with not just his statements implicating himself, but about the circumstances of this confession. The State exploited the fact that Mr. Rice's challenge of his confession was a product of coercion over and over again. The last thing that this jury heard in rebuttal closing arguments was the State flippantly and mockingly saying, you must disbelieve Mr. Rice. Because Mr. Rice got up here and told you that Sergeant John Byrne and Peter Dignan beat him in the basement of the Area 2 police headquarters. A fact that we now know, they absolutely lied. According to their own 2006 torture report, Sergeant John Byrne and Peter Dignan notorious liars about the torture that they incurred on suspects in Area 2. Ms. Lambrose, why should we draw a line at physical abuse? Can't mental abuse be just as bad? I think absolutely there should be. Again, they're asking this court to find of no consequence that officers acting under the State of Illinois tortured suspects. There's absolutely a difference between the physical torture of suspects and coercion, psychological coercion. This court's historical repugnance for what these men did, for dragging men to the basement, for flogging them, electrocuting them. Let's be very clear what happened here. This was police brutality at its worst. There is absolutely a difference and it is of consequence to this state. This state for 60 years has stood firmly behind the notion, has been a leader in saying that we will not tolerate torture in this state. We will not tolerate torture. They're asking for this court to reverse itself. And that is absolutely improper. There is a definite difference between psychological coercion and what happened in this case. Again, the ritualistic and deliberate torture of suspects at Area 2 and what happened to Mr. Rice. Well, I was going to ask you this. In terms of their, just to look at this procedurally, they're arguing it should go back for the second phase and the opportunity to amend. Now, if we were to do that, are you prejudiced somehow by going back to the second phase? I know it slows things down, but is there any advantage to you to have the opportunity to amend? Well, I'd like to point out two things. The state never asked in their briefs for this to go back to second stage proceedings. They just asked for this to deny, leave, defile, and success a post-conviction petition. I believe that what the appellate court here did under de novo review, and again, the appellate court had all the pleadings, had the trial record, and under de novo review could make the decision to remand this for an evidentiary hearing. And again, at an evidentiary hearing, Mr. Rice, who does have two other claims that were not addressed by the appellate court, would get the chance to offer those claims, that Bobby Williams, also a Burge torture suspect, that his testimony should not have been offered, and Mr. Rice's Brady claim. I think what the appellate court did was what this court can do under de novo review. Look at the pleadings, look at the record, and make a decision that he established cause of prejudice. Would you be able to amend if it went back to the third stage? Absolutely, Mr. Rice would be able to amend. Would he have the right to do that, even though we've gone beyond the second stage? I believe it would be at the discretion of the trial court. And once he gets counsel, and again, Mr. Rice has never had counsel on this petition. That's another piece. I mean, that's why we have the procedure. I mean, that's why the legislature very wisely set this up, stage by stage. Second stage, appoint counsel. Counsel, look at the pleadings as drawn by the defendant pro se, make any decisions on what needs to be amended, needs to be added, and then we proceed from there. That's how the steps are set up for that very reason. And one important step has been ignored here. But you don't see any problem with that? I think that the appellate court was within their statute to advance the claim for an evidentiary hearing. If the court's concerned that Mr. Rice is going to be barred or stopped from now amending the petition, I believe that when it goes back to the trial court, Mr. Rice's counsel appointed can amend the petition and include other claims or other evidence. Again, that would be for an evidentiary hearing. I'm not sure that the state has a right to second stage proceedings. They don't have a right to amend the petition. The court here found that the only issue really before an evidentiary hearing is cause and prejudice and determined that cause was established and now is conceded and that the prejudice problem was satisfied pursuant to Wilson. Again, Mr. Rice has established the heinous prejudice by the admission of this physically coerced confession at trial. Not only did this confession with a cornerstone to Mr. Rice's case, but the state was talking about the breakdown of the two witnesses, Bobby Williams, police torture victim, and Kenny Lewis. And I want to make just one thing very clear. This was the Rice household. This wasn't just Mr. Rice's house. Mr. Rice lived there. His sister Patricia lived there. Bobby Williams lived there. Charles Rice lived there. Several people lived there. And this was, for all intents and purposes, the party house. People were running in and out of here at all times. So the fact that Mr. Rice had an attachment to the house doesn't necessarily mean that his entire claim was defeated. Bobby Williams testified that he, again, since 1993, he's been saying before, a court, that he was beaten by Bernard Dignan in the basement of Area 2. Beaten by them until they got their story. And their story was that Mr. Rice should be implicated in this crime. Bobby Williams also was contradicted by the state's other witness, Kenny Lewis, who was very fortuitously found by the state four days before trial. A man who's mentioned by no one as being anywhere near or in the house that night. Bobby Williams, who was, again, found four days before trial, who testifies entirely inconsistent with Bobby Williams. And, quite frankly, was a man who was so compelled by what happened to this victim, he left the house to get some barbecued chicken, and then came back and just observed these proceedings and left. He knew this victim. Four days before trial. That's what the state's evidence boiled down to. There is not one piece of physical evidence connecting anyone to this crime. The victim herself, although it's tragic what happened to her, testified that three men sexually assaulted her. Three men have pled guilty to this crime. Michael Fowler, Lee Holmes, and Rodney Benson. Three men raped her and three men have pled guilty. Again, the state needed this confession, and they used it, and they exploited it at this trial. Now, the appellate court didn't find the need to go into this formal, factual prejudice analysis. The appellate court looked at this court's long-standing tradition in People v. Wilson, which, as this court has also noted, is not just Wilson. It's Lafrona, Tomlinson, Wilson, and which reaffirmed the holding of Wilson in People v. Richardson in 2009 to find that a defendant who raises an arguable claim in a post-conviction petition again, a per se rule. You've established prejudice. Why? Because the law in Illinois is that the use of a physically tortured confession is never harmless error. And this court has not wavered from that finding. And they offer you no alternative explanation for why this court in this state should all of a sudden take a detour from what is based on this court's historical repugnance of these police torture practices. Fulamonte does not hold, does not hold that the admission of a physically tortured confession is subject to harmless error analysis. The facts of that case had nothing to do with physical torture. In fact, Justice Rehnquist, a careful man, said the reason why we're applying harmless error to this issue is because there is no allegation of police torture. Illinois will stand alone as being the only state in the country to hold that the admission of a tortured confession is subject to harmless error. That's plain. Is any allegation of a physically coerced confession presumed prejudice? Or is it more compelling here because there has been evidence brought forward that there is a substantial basis to that allegation? In other words, is this different because of the unique circumstances here? I believe it is different. And I believe that that's the reason why Illinois should continue to reaffirm its own rule. We have a very bad blight from the 80s about John Burge and these torture practices. And as this case illuminates, this is 29 years later. And reaffirming this court's rule, I certainly hope, I think the state said that this type of error happens every day. I certainly hope not. I certainly hope that this is over, that we don't have this type of torture happening in Illinois. It's not really unusual that you might get allegations that I was coerced. I was coerced into giving this confession. That's a fairly regular allegation. Some are maintained, others are not. But my question is, should that alone presume prejudice? And then skip to the third stage? Or should there be, as has been discussed, a second stage proceeding? Well, under Wilson, it's more than a mere allegation. Under the Wilson rule, which this court reaffirmed in Richardson, the heightened standard of the Wilson rule and the heightened remedy only applies when there's evidence of physical injury. So it's not a mere allegation. Mr. Rice has evidence of physical injury. And as this court has reaffirmed, once the standard heightens under Wilson where there's evidence of injury, that's where the heightened remedy, there is no harmless error analysis to be applied. So a claimant coming in under the Post-Conviction Hearing Act who doesn't have evidence of physical injury like Mr. Rice, who can't make a claim under Wilson, would not be amenable to this per se prejudice finding, for lack of a better word. It's only claimants that can establish a claim under Wilson. And Mr. Rice can, and it's entirely possible, as Justice Garland pointed out, that other bridge claimants can. But someone who comes in and says, oh, I was beaten, I was beaten, with no evidence of injury, this wouldn't apply to them. Which is also why, as the State points out about this court's decisions in people v. Mahaffey and people v. Hawley, they had no evidence of physical injury. So the framework changed. It wasn't a Wilson rule case. Wilson's not even mentioned by this court in Mahaffey and it's not even mentioned by this court in Hawley. It was just different circumstances. What the appellate court found here is that Wilson, the Wilson holding, the Wilson rule and the Wilson remedy applies to a successive post-conviction petitioner so that we don't have to evaluate the evidence at second stage to, again, advance this claim for an evidentiary hearing on the merits of this police torture claim. Just clarify this for me. It seems to me there are about four or five options we would have. One, obviously, would be to reverse, which is what the State is asking for, and you're done. You're asking that we affirm and find that there can be no harmless error if there's allegations of physical violence or physical coercion. Could we affirm and say that's not a hard and fast rule, but based upon what's before us at this point in time, without the evidentiary hearing, the alleged error was not harmless? Or could we, as the last alternative, send back to flesh out the petition to have the second stage proceedings before going to a full evidentiary hearing if one is necessary? Well, Mr. Rice is hoping for, I believe it was the second option of an evidentiary hearing, but absolutely any of those. And, again, Mr. Rice maintains that the Wilson rule in Philamonte doesn't have to be addressed here. This is a prejudice prong, and under the post-conviction hearing, that prejudice prong is so infected the proceedings. Mr. Rice can certainly, on this record, meet the burden that his confession so infected the proceedings under traditional prejudice to advance it for a hearing. And a lot of these arguments and a lot of these issues will be fleshed out there. This is not a direct appeals time that we're in right now. We're just asking for a hearing on these claims. In order to flesh out some of these inconsistencies in the record and the facts, that's all Mr. Rice is asking for. So the appellate court, again, didn't see the need to evaluate the facts of this case and go into a formal prejudice prong because of the Wilson rule. But Mr. Rice maintains that, regardless, this court's precedent in Wilson should be maintained. And they've given you no reason other than just saying, well, it's of no consequence that a man was taken downstairs and carried and beaten and some of these men who were electrocuted and waterboarded, it's of no consequence to this court. That's just a regular error that happens every day in the state of Illinois. Well, it's not. And this court should not stand for that. This court should not tolerate the torture of its citizens within its walls. So even if, again, Mr. Rice maintains that Fremont did not hold that the admission of a physically coerced confession can be a harmless error. Nowhere in that opinion did they address it. Nowhere in that opinion did they even infer it. Fremont does not compel or require this court to say that the admission of a coerced confession, physically tortured confession, I'm sorry, can be a harmless error. And even if it did, which the state doesn't respond to at all, this court's not bound by that federal precedent. This court is not bound to narrow itself to the limitations that the federal court places on it. And this court has never, never shied away from granting petitioners with more rights under our Illinois Constitution, under our Illinois due process protections. And they provide you no reason why this court should not continue to uphold its precedent and continue to hold that the admission of a physically tortured confession can never be a harmless error. But certainly, as this court seems to have questions about the procedure, Mr. Rice has established formal prejudice. He has established that in his case, his confession, which was used against him at trial and exploited by the state, so infected his proceedings as to render the resulting conviction a due process violation. If there are no further questions, Mr. Rice asks that this court affirm the decision of the appellate court and remand his cause for an evidentiary hearing. Thank you. Thank you, Ms. Lambert. Mr. O'Rourke. Thank you again, Justice Kilbride. I'd like to just merely speak towards some of the comments that were raised by Stanley Rice's counsel. First, there was a citation about how the prosecutor used the evidence. It appears on page 36 of the appellee's brief. The prosecutor did not exploit these statements as a confession. The correct citation on transcript page 1688 is, all he did, according to his testimony, was deny any part of this thing. The evidence about who was the comings and goings in the house and whether this was a party house, this was a party house where two individual eyewitnesses came forward and identified Stanley Rice finding an iron in this party house, taking it, lighting it on a stove, over a three-hour period, up and down his stairways to his bedroom with his friends, where a woman was burned and raped repeatedly. The idea that the other evidence was somehow inconsequential is not the case. The other evidence is exactly what the direct appellate court looked towards in finding that there was sufficient evidence of guilt. This whole, the coercion claim, which of course is abhorrent, and the conduct of the police officers in this case, or as referenced, cannot be condoned anywhere. But the product of that, which the Supreme Court has said can be quantitatively assessed, is a denial of a confession. The direct appellate court found that the evidence was sufficient to convict beyond a reasonable doubt without any citation to the remainder of this evidence. Now, there's also a mention of one of the eyewitnesses, Bobby Williams, I believe attached an affidavit that was before this court about his abuse claims at Area 2. That affidavit does not suggest that he would testify in conformity therewith, but it also should be looked at in light of the remainder of the trial record, where the reviewing court, the lower court, can quantitatively assess that affidavit to determine whether it's, one, newly discovered evidence, and two, whether it properly recants 58 pages of his trial testimony, where he speaks towards and he testifies that Stanley Rice went up to his bedroom and raped this woman. And he aided and assisted his friends in raping them and then burned 70% of her body. And how it was that her clothes were next to Stanley Rice's bed. And it's not a correct statement about the special state's attorney's report. The pages 33 through 34 about the special state's attorney's report, including allegations that they could prove John Byrne and Peter Dignan guilty beyond a reasonable doubt, in this case or the other cases, is not a correct citation. In pages 33 of 34, what was brought before the special state's attorney, before 2006, was allegations of abuse and the state's attorney said it could not prove those beyond a reasonable doubt. It was the special interest groups who brought this material towards the special state's attorneys who drew those conclusions. So that's an inaccurate statement about the special state's attorney's report. The special state's attorney's report suggested that in three instances it could prove guilt beyond a reasonable doubt. It did not mention these individuals. However, that is not to say that there was not powerful evidence that would advance the constitutional claim that was brought in previous proceedings. There are OSP reports that were attached to the previous post-conviction petition. Stanley Rice has had consistent judicial review of these claims and has had review since 1991 of his claims. He was appointed counsel in 2001 prior to the disposition of his second post-conviction petition. And the trial court asked on the record, I have all this evidence and I have thick evidence to support your allegations, and exclaimed, but you maintain that you did not confess. How would this, like Hobley, how would this have changed the result on retrial to that jury? How can this be quantitatively assessed? And there's overwhelming evidence of guilt that was in the trial record on appeal, on direct appeal, that suggests that you were determined guilty without reference, legally, without reference to these denials of misconduct. He merely states in his second interview with the state's attorney, ASA McCurry, that he went up the stairs. It is entirely cumulative to the other properly admitted evidence. And that he saw other people raping this woman. Entirely cumulative to the other properly admitted evidence. And he says he dropped an iron. Well, we know that's not true because 70% of her body, and there were iron marks on her body. I mean, this was already, the disposition of this case was proven in the trial court that courts can review and look towards to make a determination that overwhelming evidence exists. As this court found in People v. Mahaffey, when it looked at a 23-page confession that concerned an Area 2 brutality claim and looked towards overwhelming evidence and said even if the result of the suppression hearing would have been different and those statements were excluded, Reginald Mahaffey was guilty in that instance because we have all this overwhelming evidence. What we are merely asking is this court, and there is no right line rule about physically or involuntarily or having an involuntary confession, whether it be physical or psychological. It's simply not correct. And Wilson relied on previous U.S. Supreme Court authority that has been expressly overruled by a majority of the United States Supreme Court. We abhor all confessions, but they all have one thing in common. They are individualized and they are to be determined in light of other evidence that exists in the trial record and can be quantitatively assessed according to the majority of the Supreme Court of the United States. And this case was brought pursuant to the Fifth Amendment and that is what the trial court was reviewing and it also was reviewing previous court orders that offered a logical rationale for dismissal and prior proceedings where it was appointed by a counsel that is not impacted by the admission of any more brutality evidence. The review questions whether the appellate court erred in finding that the use of any coerced confession is not subject to harmless review. And a claim brought pursuant to the Fifth Amendment of the United States Constitution and finding prejudice satisfied in a successive post-conviction petition in advance to an evidentiary hearing. Without regard for overwhelming evidence of guilt and the inconsistency of the claim in light of the trial record where defendant consistently maintained that he did not confess. We ask this court to likewise rule and affirm the decision of the trial court because the harmless error standard presents a judicially manageable standard that has been applied in other cases concerning constitutional questions. We believe the courts in Illinois are well equipped to make the determination and to quantitatively assess the impact of the evidence in light of the trial record. We thank you for your consideration. Thank you Mr. O'Rourke and Ms. Lambros for your arguments today. Case number 111860, People v. Stanley Rice is taken under advisement as agenda number 12. Mr. Marshall, the Illinois Supreme Court stands adjourned until Tuesday, September 20, 2011, 930 a.m. The court is adjourned.